Charles H. Force & Co.

*v.*

The Town of Batavia, in Kane County.

</div>

1. Subscription to railroads by municipal corporations, *and the issue of bonds therefor—of the election by a township under the special act of February* 18, 1857, *by whom it must be called.* The act of February 18, 1857, authorizing any city, county, incorporated town, or any township organized under the township organization laws, situated on or near the route of certain designated railroads, to become subscribers to the stock of such roads, and to issue their bonds for the amount of the stock so subscribed, provides that, upon the application of any fifty voters of any such city, town, etc., specifying the amount to be subscribed and the conditions of the subscription, it shall be the duty of the clerk of such city, town, etc., to call an election in the same manner that other elections for said city, town, etc., are called, for the purpose of determining whether such city, county, etc., will subscribe to the stock of such road, etc., and if a majority of the votes shall be for subscription, it authorizes the proper authorities to cause such subscription to be made and the bonds therefor to be issued : *Held,* that an election, under the provisions of this act, by a township, to determine whether it would make such a subscription, called by the town supervisor, was void, and the vote therefor, although in favor of subscription, conferred no power on the county authorities to issue the bonds therefor. The town clerk, and he only, could legally call such election.

2. Nor would the eighth section of article four of the act of 1861, in relation to township organization, which authorizes the supervisor to call special town meetings in the absence of the clerk, have the effect, if such contingency happened, to render valid such an election so called by the supervisor. The act authorizing the subscription being a special act, the

proceedings under it must be in conformity with its provisions, and the provisions of the township organization act have no application to such a case.

3. It has also been held, in similar cases, where subscriptions were made and the bonds issued, but the election was called by a wrong authority, that the bonds, though in the hands of innocent holders, were absolutely void.

APPEAL from the Circuit Court of Kane county; the Hon. SILVANUS WILCOX, Judge, presiding.

Mr. B. C. COOK, for the appellants.

Mr. W. B. PLATO, Mr. J. O. McCLELLAN, and Mr. S. W. BROWN, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was a bill in equity on the chancery side of the circuit court of Kane county, to enjoin the delivery of certain bonds alleged to have been voted by the town of Batavia, in aid of the construction of the Ottawa, Oswego & Fox River Valley Railroad, and deposited with Bishop & Coulter, bankers in the town of Batavia, the bonds being claimed by appellants as earned by them in the construction of this road through that town.

The circuit court decreed as prayed for by the bill, and made the injunction perpetual.

To reverse this decree, the defendants have appealed to this court, and have assigned as errors, admitting improper evidence offered by appellee, excluding competent evidence offered by appellants, and in rendering the decree in favor of appellee.

We have confined our attention to one point only, in this case, the decision of which determines the whole controversy. It is the fifth point made by appellants, and the first made by appellee, namely, that the election was not ordered by a person having authority.

The act of the general assembly, under which the election for subscription was held, is as follows :

" Any city, county, incorporated town, or any township now or hereafter organized under the township organization laws, which may be situated on or near the route of the Ottawa, Oswego & Fox River Railroad, or of the Chicago, Amboy & Upper Mississippi Railroad, or of the Joliet and Mendota division of the Joliet & Terre Haute Railroad, as the same may have heretofore, or may hereafter be surveyed and located, may become subscribers to the stock of any such road, and may issue bonds for the amount of such stock so subscribed, with coupons for interest thereto attached, under such limitations and restrictions, and on such conditions as they may choose and the directors of said company may approve, the proposition for said subscription having first been submitted to the inhabitants of such city, town, county or township, and approved by them. And upon application of any fifty voters of any city, town, county or township, as aforesaid, specifying the amount to be subscribed, and the conditions of said subscription, it shall be the duty of the clerk of such city, town, county or township, immediately to call an election in the same manner that other elections for said city, town, county or township are called, for the purpose of determining whether said city, county, township or town will subscribe to the stock of said road ; and if a majority of said votes shall be ' for subscription,' then the county court or board of supervisors having jurisdiction over county matters in said county, or the corporate authorities of said city, or town, or the supervisors and town clerk of such township so voting, shall cause said subscription to be made ; and upon its acceptance by the directors of said company, shall cause bonds to be issued in conformity with said vote, which bonds shall in no case bear a higher rate of interest than ten per cent per annum, and shall not be of a less denomination than one thousand dollars, and shall be accepted by said company at their par value."

It will be perceived by this act that, on the application of any fifty voters of any city, town, county or township, specifying the amount to be subscribed, and the conditions of the subscription, the clerk of such city, town, county or township, and he only, can call the election. This is fundamental, and if this direction of the law has not been observed, we must hold, in conformity with previous rulings of this court, that the election was void and conferred no power to make the subscription and to issue bonds therefor.

The first case decided by this court bearing upon this point is, *Supervisors of Schuyler county* v. *The People, ex rel. R. I. & Alton R. R. Co.*, 25 Ill. 182, and the same appellants v. *Charles Farwell*, ibid.

The first was an application for a *mandamus* to compel appellants to issue and deliver to the relators bonds of the county to the amount of sixteen thousand dollars, in payment of an alleged subscription of that county to the stock of the relators. The alternative writ alleged the charter and organization of the company, and an order of the board of supervisors of the county directing an election to be held, and that at the election a majority of the voters voting on the question voted in favor of the subscription of seventy-five thousand dollars to the stock of the company, which was subscribed by the chairman of the board, and bonds to the amount of fifty-nine thousand dollars actually issued and delivered.

The county made return to the writ, setting up, among other things, that the board of supervisors had no authority to cause an election to be held, or to make the subscription, or to issue the bonds; that the county court never acted in the premises, and that the county is not bound to issue bonds.

The act authorizing the subscription provided that the county court of each county through which the road was proposed to run, might subscribe for stock and become stockholders, and for that purpose to issue bonds; and the county court of such counties was required to order an election, that a vote might be taken for or against subscription.

By an amendment to this act, the county courts of Scott, Schuyler, McDonough and Warren counties, were authorized and directed to issue bonds in payment of all stock subscribed, and to levy a special tax to meet the interest accruing on such bonds.

All these acts were performed by the board of supervisors of Schuyler county, the county court taking no part in them; and although they had issued fifty-nine thousand dollars of bonds on their subscription of seventy-five thousand dollars, this court refused a *mandamus* to compel the issuing of the remaining sixteen thousand dollars, the court holding that the acts of the board of supervisors were not binding on the county, they having done what the law required the county court to do. The court said: "These bonds were executed by the board of supervisors without the least shadow of authority. As well might the sheriff of the county or the circuit court have undertaken to perform these acts and execute these bonds as this board of supervisors. There was a total want of authority, and the acts were consequently void."

In Farwell's case, he held thirty-six coupons attached to these bonds, of thirty-five dollars each, and he was denied a recovery, on the grounds stated, that the acts of the board were without authority. The election had been called, not by the power to whom authority was given, but by another and different power, and it was therefore void.

In this case, power was given to the town clerk, and to him alone, on the petition of fifty voters, to call an election. The supervisor of the town called the election, which, upon the authority of the above cited case, was wholly void. There was no warrant of law for an election thus ordered.

In *Clarke* v. *The Board of Supervisors of Hancock County*, 27 ib. 305, it was held, if an election was held without warrant of law, or if it was ordered by a person or tribunal having no authority, there can be no doubt that the whole proceeding would be absolutely void. Such an election, and

every subsequent step, would be unauthorized and void, and therefore incapable of ratification by the county authorities.

In *Supervisors of Marshall County* v. *Cook*, 38 ib. 44, which was an action to recover interest due by a coupon attached to a bond issued by the board of supervisors of Marshall county in payment of subscription to stock in a railroad company, a recovery was defeated on the ground that the election was called by the wrong authority, and the bonds issued thereunder were absolutely void. The fact that a majority of the votes at such an election was in favor of the subscription would not relieve it of its illegality. Majorities were as powerless to divest a person of his property as are minorities. That can be done by neither, except in the manner prescribed by law. The election being called without authority, the vote would confer no power.

These cases hold, when an election of this character is not ordered by the proper authority, the vote would confer no power to issue bonds. In these cases, bonds had been issued, and in Farwell's case had passed into the hands of an innocent holder, yet the court held, as the election was ordered by the wrong authority, all the proceedings under it were absolutely void, and an innocent holder could have no advantage from such a position.

These being the views entertained by this court in cases appealing most strongly to a liberal judgment on the facts, then in this case, where the bonds have not been put in circulation, and innocent holders can not suffer, we must hold that the election, having been called by the town supervisor, and not by the town clerk, the vote at such election conferred no power on the county authorities to issue the bonds in question.

It is, however, urged by appellants, that the town supervisor was the proper official to give the notice. How this can be seriously urged, in view of the plain direction of the statute, we do not understand. It is said the law required the town meeting to be called in the same manner that other town meetings are called, and by section 8 of article 4 of the act of

1861, in relation to township organization, the supervisor is authorized to call special town meetings, in the absence of the clerk.

This, manifestly, was not a special town meeting under the section referred to, for the requirement of that section is, that the notices shall be posted up in five of the most public places in the town. The notice actually posted in this case was in three of the most public places in the town. This, then, was not a special town meeting, but a notice of an election.

But if it was a special town meeting, the supervisor could only act in the absence of the town clerk.

Crandon, in his cross-examination, says, when he signed Moss' name to the notice, he thinks the town clerk was in the bank at Batavia, and said he could not leave the bank. So the contingency had not happened in which the town supervisor could give the notice. This act authorizing subscriptions to this road was a special act, and the proceedings under it must be in conformity to its provisions, and we do not think the provisions of the township organization act have any application to this case. *Wiley* v. *Town of Brimfield,* 59 Ill. 306.

The election having been called by an unauthorized person, that, and its results, are void and of no effect. Neither has any greater validity than the unauthorized action of a mass meeting would have.

Appellants well knew, or might have known, the election was illegally called, and could have governed themselves accordingly.

The decree of the circuit court making the injunction perpetual, must be affirmed.

*Decree affirmed.*