# WINDSOR COUNTY,

## FEBRUARY TERM, 1868.

[CONTINUED FROM PAGE 318 OF VOL. 40.]

### ELIAS E. COX v. TOWN OF MOUNT TABOR.

*Towns. Soldier's Bounty. Contract. Past Consideration. Vote to rescind.*

The vote of a town to pay "the veteran soldiers" a bounty, without specifying what veterans, will be interpreted to apply only to the veterans whose service stood to the credit of the town which passed the vote.

A soldier's town credit was, during the war, *property*, and as such had a pecuniary market value.

A town having had the benefit of a soldier's credit without promising the soldier compensation, would not be bound to pay for it; but if, subsequently, they promise by a vote to pay for this property of the soldier received by them, the promise will be upon good consideration, and may be enforced as a contract by the soldier.

The vote to pay for the soldier's credit which the town had before that time received, constituted the completion of a contract, and it was not in the power of the town, one of the parties to the contract, to avoid it afterward by a vote to rescind.

ASSUMPSIT to recover a town bounty. Plea, *non assumpsit*. Trial by the court by consent of the parties, May term, 1867, BARRETT, J., presiding.

The case was submitted upon the following statement of facts agreed upon by the parties.

The plaintiff enlisted in company D of the 7th regiment of Vermont volunteers on the 17th day of December, 1861, and was mustered into the service of the United States on the 12th day of February, 1862, and was credited to the quota of the defendant town, on calls previous to the call of the 17th day of October, 1863, for 300000 men. On the 17th day of February, 1864, the plaintiff re-enlisted as a veteran, in the same company and regiment as before ; and was again mustered in, and credited to the defendant town to apply on the call of the 17th of October, 1863, for 300000 men, and subsequent calls. The plaintiff was finally discharged and mustered out of the United States service on the 14th day of March, 1866. On the 7th day of March, 1865,

the defendant town, at its annual March meeting, "Voted to pay the veteran soldiers three hundred dollars bounty, and seven dollars per month as long as they remain in the service." The plaintiff was a veteran soldier, as aforesaid. The defendant town, at its annual meeting held on the first Tuesday in March, 1866, "Voted *not* to pay the bounty to veteran soldiers that was voted at the last annual March meeting;" and, further, "Voted to pay M. M. Tarbell and Elias E. Cox, veteran soldiers, each the sum of one hundred and eighty dollars, if they will accept the same and free the town from all claims whatsoever." On or about the 27th day of May, 1865, the plaintiff received of the defendant town the sum of one hundred and eighty dollars, on account of town bounty. Said sum of one hundred and eighty dollars was not accepted, under the vote of March, 1866, aforesaid. The Report of the Adjutant General shows the town of Mount Tabor to have had an excess of one man over and above all its quotas, on the final accounting at or about Sept. 1, 1865. The plaintiff's right of recovery depends entirely upon the action of the defendant town as aforesaid, and his service as a soldier as aforesaid. It is conceded that the votes above recited, were in accordance with the warning of the town meetings respectively.

The court adjudged the plaintiff entitled to recover according to the vote of March 7, 1865, deducting the payment of $180 made on or about the 27th of May, 1865, the sum of $   , to which the defendants excepted.

*Joel C. Baker*, for the defendants.

*L. Adams*, for the plaintiff.

The opinion of the court was delivered by

STEELE, J. This case involves three questions. The first relates to the interpretation of the vote, "To pay the veteran soldiers three hundred dollars bounty, and seven dollars per month as long as they remain in the service." The second relates to the legality of the vote of March, 1865, to pay a bounty for past services. The third relates to the effect of the vote of March, 1866, rescinding the vote of March, 1865.

I.   It is very true that the words of this vote, viz., "To pay the veteran soldiers three hundred dollars bounty," etc., are sufficiently general to include all the veterans then in the army.   It might be added, that there is nothing in the language to limit it to our army.   The words might include the army of Mexico or the veterans in the rebel service.   If such were its fair interpretation, we think there is no question but the vote would be invalid.   But this vote, like a contract, is to have a reasonable construction, and is to be interpreted with relation to its subject and the situation of the parties.   The defendant town was at that time under obligation to provide its quota of men for the army of the United States.   Certain classes of re-enlisted men were at that period called veterans, and there were at the time of this vote soldiers of this class in the field, whose service stood to the defendants' credit. In view of these facts, it is beyond question that the fair application of the vote is to these men to whom the town was thus indebted.   So, too, there is no doubt but this vote was intended to provide $300 bounty and $7 per month for each veteran, and not a gross sum for a class of men.   There is no reason why a court, in the interpretation of a contract, should reason artificially, or affect not to see and understand what outside the court-room would seem patent and unmistakable.

II.   It is said that this vote provides a compensation for service already performed, or which the veteran by his re-enlistment was legally bound to perform.   It would be, perhaps, a sufficient answer to this, that towns are by statute authorized to vote bounties for past services.   But if the statute had not been thus specific, if it had merely authorized towns in general terms to make contracts upon this subject, it would be impossible to distinguish between a contract to pay money in consideration that a man had enlisted to the defendants' credit, and the same agreement in consideration that the man would enlist to their credit.   The plaintiff, by suffering his name to be passed to the credit of the defendants, had rendered them a valuable pecuniary service.   It being a voluntary act, he could not compel the town to promise to pay him for it; but if they did so promise, the service he had rendered would be a sufficient consideration to make that promise a contract.   The

vote was not to bestow upon the plaintiff a gratuity, but to compensate him for giving the town the credit of his name. This credit it was at the outset in the plaintiff's power to pass to any town he should like. It was *property*, and a kind of property which in those days had a well recognized market value, commanded quick sales, and was the subject of no inconsiderable traffic. In parting with that *property* to the benefit of the defendant town, the plaintiff gave them value; and this vote was but a promise to pay for it, and as such it made a valid contract upon good consideration.

III. What has been said on the second head, is applicable to this. It is very clear that, if the vote, with what had been done before, constituted a valid contract between the town and the plaintiff, it was not in the power of the town, one of the parties, by rescinding their vote to absolve themselves from their contract. A town, like an individual, may change its purposes, and a town may express this change by its vote, and, unless some right in another has been acquired or has vested under its action, no one may complain of the change. Thus, a town might vote to authorize its selectmen to pay bounties, in their discretion, to such as should thereafter enlist to its credit, and if it should rescind the vote before any contract had been made under the vote, its action would doubtless be valid. One vote may make an offer, and another recall it before it is accepted. So a town may rescind a resolution or vote which merely relates to its own policy, unless estopped by having suffered parties to act upon it and acquire rights under it, so as to be prejudiced by a rescission. Such was the case of *Gilman* v. *Stoddard*, 22 Vt., 568; where the town rescinded a vote to raise money to build a highway. But neither a town nor an individual, after having made a promise which, by its connection with the past conduct of others, constitutes the completion of a contract, can by taking back their words, revoking or rescinding their promise, terminate the contract. The vote to rescind can in no respect of this case affect the plaintiff's right of action; for the first vote was either a naked promise, or it was a promise upon good consideration. If it was a naked promise, or, in other words, a mere vote to make a gift

or bestow a gratuity, it was not sufficient to support this action,. even if not rescinded. If it was a promise upon consideration, it was not in the power of the promisors by their vote effectually to rescind it.

The whole question, therefore, is settled when it is determined that the plaintiff's enlistment to the defendants' credit, was a valuable service to the defendants which might be the consideration of a valid contract on their part to pay him.

Judgment affirmed.