## LOWELL W. HAVEN *v*. TOWN OF LUDLOW.

*Soldier's Bounty.    Vote to Rescind.    Towns.*

The plaintiff having re-enlisted in the field to the credit of his town, under an assurance of the authorized recruiting agent of the town, that if he would re-enlist to the credit of said town, he would receive such pay as the town paid other soldiers, and the town would probably pay as high as $500, it was *held* that he was entitled to the bounty subsequently voted by the town to re-enlisted veterans, and his right could not be defeated by a subsequent vote to rescind.

The language of the vote being "to pay to each re-enlisted veteran who has re-enlisted for three years, and who has received no town bounty, five hundred dollars and to increase the bounty of those re-enlisted veterans who have received some bounty to five hundred dollars, excepting commissioned officers, and those who have died leaving no families, and deserters," the plaintiff having received but ten dollars under his first enlistment, his right of action accrued upon his re-enlistment, and demand and refusal, and having served through his full term and not having received a commission, or died, or deserted, his right of recovery was perfect at the time of trial, in an action brought before his term expired. What the effect would have been if he had received a commission, or died, or deserted before suit was brought and before his term expired, is not decided.

ASSUMPSIT, to recover town bounty. Plea, the general issue. Trial by the court, May term; 1867, Windsor county, BARRETT, J., presiding.

The plaintiff gave in evidence general order No. 1, of the governor of this state, dated October 28, 1863, appointing selectmen recruiting officers, etc.; also, order No. 2, 1863, assigning the quotas of the respective towns and showing the deficiency of each town; also the record of a meeting of said town held on the 31st day of December, 1863, and the warning of said meeting, dated December 19, 1863, the town voting to pay a bounty of $500 to each volunteer to fill the quota of the town under the last call of the president for 300000 men, and the deficiency under the draft of July, 1863 ; also the record of a meeting of said town held March 7, 1865, and the adjourned meeting held March 11, 1865, and the warning of said meeting dated February 20, 1865, said town voting to pay to each re-enlisted veteran, who has re-enlisted for three years and who has received no town bounty, $500, and to increase the bounty of those re-enlisted veterans who have received some bounty, to $500 ; also a certificate from the adjutant and inspector general's office of copies of town credit

books A., B, C, and D, so far as relates to the town of Ludlow, certified May 28, 1867 ; also a certificate of copy of town credits ledger, so far as relates to the town of Ludlow, certified May 28, 1867, from which it appears that the town of Ludlow had furnished its quota of all the men required by the several calls of the president, and no more.

The plaintiff enlisted into the service of the United States, in the war of the rebellion, as a veteran, December 21, 1863, at Brandy Station, Va., and was mustered in the next day, or the next day but one, his residence then being in Ludlow, Vt. The plaintiff testified : "I think I understood that I re-enlisted under the call for 300000 men." There was no evidence tending to show that the town or its officers had any knowledge of this enlistment at the time it was made.

The plaintiff also gave evidence tending to prove that he was re-enlisted by Capt. White in the field, and that he was informed by him that towns were paying large bounties, and that he could be set to the credit of any town that he should elect; that the plaintiff enlisted for the purpose of obtaining from Ludlow whatever bounty they were then paying or might afterward vote to pay ; that the plaintiff made his father, Parker A. Haven, his agent in these matters, and, before he enlisted, wrote to his father to learn what bounties Ludlow was paying or would pay ; that said Parker A. had some talk with Calvin Riggs, one of the selectmen of Ludlow, who told him that if the plaintiff went to the credit of the town, he would receive such pay as the town paid other soldiers, and the town would do as well as other small towns, and probably pay as high as $500 ; that said Parker A. communicated the same to the plaintiff by letter, written about December 31, 1863, and that the plaintiff enlisted in expectation, from what Capt. White told him, that the town would probably pay as high as $500, and he learned from his father that they were going to have a meeting to fix the sum they would pay, and thereupon let himself stand credited to said Ludlow ; that some time after, the plaintiff learned that said Ludlow had voted to pay to re-enlisted veterans, who had received no bounty, the sum of $500, and to those who had received some bounty, such further sum as

would make $500; that the selectmen of Ludlow were notified of the re-enlistment of the plaintiff, and that he was credited to said Ludlow, early in January, 1864; that he in fact re-enlisted under the call of October, 1863, though he was credited to said town under the call of February, 1864; that he was credited to Ludlow after he understood that they would probably pay $500 bounty; that Ludlow, March 14, 1864, and after the plaintiff had been credited to said town, had a deficiency of eight men, and that soon after, all the calls and the draft of July, 1863, were consolidated.

The defendants gave in evidence the record of a meeting of the town, March 28, 1865, and the warning of said meeting, showing that the town voted to rescind the vote of March 11, 1865. The defendants had notice of the plaintiff's re-enlistment to their credit, in January, 1864.

It also appeared that the plaintiff had enlisted and been credited to said Ludlow, September 9, 1861, and served until December 21, 1863, and was then honorably discharged; that he received $10 bounty of the town; that after the plaintiff re-enlisted, December 21, 1863, he remained in the service of the United States to the credit of Ludlow to the end of the war, and was honorably discharged, July 15, 1865; that the plaintiff demanded payment of the town and commenced this suit to recover the same before said town voted to rescind the vote of (paying bounties) March 11, 1865; that the quota of Ludlow was full when the plaintiff re-enlisted, though this was not known to the plaintiff or the defendants.

Upon this state of facts the court decided that the plaintiff should recover $490 and interest upon the same from———————. Exceptions by the defendants.

*Sewall Fullam* and *Wm. H. Walker*, for the defendants.

The plaintiff had done nothing under the vote before its rescission, (seventeen days), nor even since, nor does it appear that he had any knowledge of it. To be sure he served, but he was bound to that before, by his own consent, in a manner and by a force he could not resist. He says he re-enlisted under the expectation of a bounty from the town, but that does not vary the case in the

least; for an actual promise made subsequently upon that consideration would not be binding. *Peak's cases*, 72. It cannot be law that where the vote was not the consideration for the enlistment, and no additional act was thereby induced on the part of the plaintiff, that the town has not the power of rescission. Nor indeed if such act had been induced, could the plaintiff claim anything beyond the actual damages thereby occasioned, which in this case would be precisely nothing, for he had served under his re-enlistment more than fifteen months, and nearly served his time out, before the vote passed. *Pearson* v. *Pearson*, 7 Johnson, 25. This is a case of an unexpected gift or *bonus*, and a *quasi* promise, without any consideration whatever. No obligation existed on the part of the town to pay this plaintiff anything; and nothing that could aspire to the dignity of a moral obligation existed to compel the town to do better by this plaintiff than a host of others equally deserving. When a promise rests upon a moral obligation as a consideration, it should be both ample and legal. 1 Parsons on Con., (4th ed.) 359, 362, in note and cases there cited; *Hawley* v. *Farrar*, 1 Vt., 420; *Barlow* v. *Smith et al.*, 4 Vt., 139.

The enabling act never authorized this vote; it is not within its words, or its spirit and meaning. Gen. Sts., 118. The vote was a mere nullity. The article under which this vote was passed reads as follows: "Art. 7. To see if the town will pay bounties to volunteers who have enlisted in the field." (For the vote see head note.)

The vote is to pay all re-enlisted veterans, etc., without designating where they should volunteer from, or what regiments they should volunteer into or serve in, and of course would apply to all re-enlisted veterans who should volunteer for three years, even though they come from a foreign country and served in a California regiment, or a rebel organization. This would be intolerable. No intendment is to be made in favor of a gift, or of injustice; and nothing can be received to extend the vote beyond its words as contained in the record. If the vote is really binding and could not be revoked or corrected, then this action was prematurely commenced. The vote was not to pay commissioned officers, deserters, or those who died leaving no families. All these must be determined before any right to claim the bounty or *bonus*

would accrue. This action was commenced March 11, 1865, and the plaintiff was discharged July 15, 1865. It could not be determined whether he was entitled to a bounty or not until he was discharged.

*F. C. Robbins* and *John F. Deane*, for the plaintiff.

If the plaintiff takes nothing under the first vote, the last vote, of March 11, was the basis of, and became, a binding contract between the defendants and any person who as a veteran volunteer had performed the conditions of the offer. The plaintiff fully performed all the conditions of that offer, and the contract was fully perfected. The law, upon which contracts of this character rest, is well settled in 5 Met., 56; 4 B. & A., 621; 24 E. C. L., 127; 6 Mass., 344; 3 Met., 352; 7 Met., 409.

The town by their vote, on the 11th day of March, 1865, undertook and virtually agreed to pay for services rendered; the consideration was valid and all the law required, and the defendant town, by their vote or agreement to pay for the services rendered, perfected the contract and put it out of their power, by a subsequent vote, to rescind the offer, or wipe out their liability. *Gale* v. *Jamaica*, 39 Vt., 610; *Seymour* v. *Marlboro*, 40 Vt., 171; *Cox* v. *Mt. Tabor*, 41 Vt., 28; *Johnson* v. *Newfane*, 40 Vt., 9.

The opinion of the court was delivered by

PIERPOINT, C. J. It appears from the exceptions in this case, that on the 21st day of December, 1863, the plaintiff was in the service of the United States as a soldier, and stationed at Brandy Station, Virginia; on that day he re-enlisted as a veteran volunteer; that at the time he re-enlisted he was told by his captain that towns were paying large bounties, and that he could be set to the credit of any town that he should elect; that the plaintiff made his father, Parker A. Haven, his agent in the matter, and through him inquired what bounties the town of Ludlow (which was his place of residence) were paying or would pay; that his said agent talked with one of the selectmen of said town, who told him that if the plaintiff went to the credit of said town he

would receive such pay as the town paid other soldiers, and the town would do as well as other small towns, and probably pay as high as $500; that the plaintiff enlisted in the expectation that the town would probably pay as high as $500. The plaintiff's agent informed him of what the selectmen had said, and that the town were going to have a meeting to fix the amount that they would pay. The plaintiff thereupon had himself set to the credit of said town. The selectmen were notified of the re-enlistment of the plaintiff, and that he was credited to said Ludlow early in January, 1864, and he was applied upon their quota under the call of February, 1864, and before that call was filled.

On the 31st day of December, 1863, said town voted to pay a bounty of $500 to each volunteer to fill the quota of the town under the call of the president for 300000 men and the deficiency under the draft of July, 1863. As the plaintiff did not apply upon the quota of the town to fill this call, he does not come within the terms of this vote, but it by no means follows that the plaintiff would not be entitled to a bounty by reason of this vote, on account of the assurance by the selectmen that if he re-enlisted and went to the credit of the town, he would receive such pay as the town paid other soldiers. But it is not necessary to pass upon that question, because on the 11th day of March, 1865, and while the plaintiff was still in the service under the enlistment aforesaid, the town of Ludlow "voted to pay to each re-enlisted veteran who has re-enlisted for three years and has received no town bounty, five hundred dollars; and to increase the bounty of those re-enlisted veterans who have received some bounty, to five hundred dollars, excepting commissioned officers, and those who have died leaving no families, and deserters." This vote, it is conceded, includes the plaintiff.

We have here all the elements necessary to constitute a perfected valid contract between these parties. The plaintiff re-enlisted and had himself credited to the town, virtually at the request of one of its selectmen, whose duty it was to see to the procuring of volunteers, and relying upon the assurance that he should be paid such bounty as the town paid to other soldiers, the amount to be subsequently fixed by the town. On the 11th of

March, 1865, the town, by its vote, fixed the amount at $500, less the amount of bounty already received, which in the plaintiff's case was $10. It is difficult to see how the case would have varied in principle if all these facts had transpired before the plaintiff enlisted, and then it is conceded the town would have been liable, as the power of the town under our "enabling act" to raise money by taxation to procure the enlistment of volunteers to fill their quotas, is not denied, and the facts in this case furnish no basis on which to raise the question as to the power of the town to raise money by taxation, to be donated to the soldiers who had enlisted and been applied upon its quotas without any previous understanding upon the subject.

Treating this as a binding contract between the parties, it is obvious that the attempt of the town to evade their obligation under it, by rescinding the vote of the 11th of March, 1865, was wholly inoperative.

The main principles governing this case were recognized and established in *Cox* v. *Mt. Tabor*, 41 Vt., 28.

But it is said, conceding the liability of the town, this action is prematurely brought, for the reason that at the time the suit was commenced the plaintiff's term of service had not expired, and he might thereafter get a commission, die leaving no family, or desert, so as to come within the excepted class. It is to be observed that the language of the vote is in the present tense; the promise is " to pay," which, without any qualifying words, means to pay then, or on demand, not at some future time, or on the happening of some future event. The plaintiff made demand, and on refusal, brought his suit. His right of action was then clearly perfect. The language of the exceptions also would seem to be in the present tense, having reference to a then existing class of persons : " commissioned officers," " those who *have* died leaving no families," not those who may hereafter die, " and deserters." What the effect would have been upon the plaintiff's right to recover, if, before the trial and before the end of his term of service, he had received a commission, or died, or deserted, we have now no occasion to inquire, as it is conceded that at the time of the trial he had served out his full term, and none of these events had

happened; so that his right of action was perfect when the suit was brought, and his right to recover perfect at the time of trial.

This case was tried by the court, and although the court below has not stated definitely what facts they found, yet as they rendered a judgment in favor of the plaintiff, we are to assume that they found such facts as the facts and evidence detailed seem clearly to establish, and which are necessary to sustain the judgment.

Judgment of the county court is affirmed.