# J. Y. THORP ET AL.

## V.

# S. N. KING ET AL.

42  513
53  104

*Municipal Corporations—Town Meetings—Rescission of Action of—Former Adjudication.*

1. A town in a county under township organization may lawfully build a town hall. Likewise such town, like an individual, may change its purpose and rescind its former action to this end, unless some right in another has been acquired or has vested under its action.

2. The power of a town to erect a hall or to rescind a former determination to do so, may be exercised at the regular annual town meeting or at a special town meeting, if called for that purpose.

3. All electors are charged with notice of the time when an annual town meeting will be held, and also with knowledge that any and all corporate business of the town may then be lawfully transacted.

4. In the case presented, this court holds, in view of the evidence, that the annual town meeting in question had full power and authority to consider and act upon a proposition to abandon the erection of a town hall and to rescind the action of a previous special meeting, though the notice of the town clerk as to the convening of such town meeting contained no statement that such was the object, or one of the objects of the meeting, un'e-s such rescission illegally affected some vested right or interest of another, and that such was not the case herein.

5. A tax payer who has paid taxes levied for a certain purpose by a town, does not become thereby invested with such right as to deprive the town which had all its power from a majority of the legal voters thereof, from withdrawing from the completion of such purpose; all that is required in such cases is a restitution to tax payers.

6. No contract for the erection of a town hall or any part of the work of its construction having been entered into when the annual town meeting decided not to build, the fact that the building committee afterward contracted for its construction and paid certain sums of money under such contract, can not operate retroactively and make invalid the action of the town meeting.

7. The fact that the auditing board of the town audited the disbursements of the building committee and accepted the same as valid appropriations from the building fund, can have no bearing upon the question of the power of the annual town meeting to act.

8. To create a complete or partial bar to a given proceeding, a prior judgment must be between the same parties, standing in the same capacity, or else between their privies.

[Opinion filed December 3, 1891.]

IN ERROR to the Circuit Court of McLean County; the Hon. ALFRED SAMPLE, Judge, presiding.

The town of Normal in McLean County, at a special town meeting on the 22d day of June, 1889, determined to erect a town hall and ordered that a levy sufficient to raise $6,000 be made for that purpose. A committee of five was appointed, and empowered to select and purchase a site for the hall, and to supervise the construction of the building, and exercise the usual powers of a building committee.

This committee perfected an organization and received a proposition from Thomas Metcalf to sell them forty feet of ground for a site for the hall. At a meeting of the committee on the 5th of August, 1889, a motion that an offer of Thomas Metcalf to sell sixty-two and one-half feet at the corner of Broadway and North streets, at $10 per foot, as a site for said hall, be accepted, was adopted, and the secretary directed to notify Mr. Metcalf of such acceptance, and that the purchase money would be paid when taxes were collected. Mr. Metcalf, who was then in Boston, was so notified, and on the 10th of August, 1889, replied by letter, stating that his offer was for two lots (forty feet) and that there was a cloud upon his title which he was taking steps to remove, and when that was done he would be in condition to make a warranty deed, and that to aid him in answering as to the additional twenty feet of ground included in the committee's order, he desired information from them as to any proposed change in the plan of the building, as they seemed to want more ground than he had offered them. The records of the committee do not disclose that any further action was taken with regard to the purchase of a site or as to the matter whatever, until after the annual town meeting of the town of Normal in April, 1890. A levy was made upon the taxable property of the town to provide funds to pay for the proposed town hall. At this regular town meeting, which was held as required by the statute, on the 1st day of April, 1890, and which was attended by nearly four hundred voters, a motion was adopted rescind-

ing and annulling the action and proceedings of the special
town meeting held 22d of June, 1889, relating to the build-
ing of a town hall, and declaring that the erection of such
proposed hall was an unwise and extravagant expenditure of
money, and that it be abandoned, and that no more of the
taxes levied therefor should be collected, and that so much as
had been collected should be refunded to the persons who had
paid them, less the commission paid for its collection.    The
vote upon the adoption of this resolution stood 296 for and 98
against it.

The individual members of the building committee were
each present at this annual town meeting.

The building committee created by the special June meeting
refused to recognize this action of the regular town meeting
as legal, but proceeded to complete the negotiations with
Metcalf for a site for the building.    Their records show that
at a meeting of the committee on the 23d of May, 1890, they
directed that an abstract of the title of the Metcalf property
be procured by the secretary of the committee, and that if the
title be found perfect that Metcalf be requested to execute a
good and sufficient warranty deed, for which payment was
ordered to be made by the committee; and the record of a
meeting of the committee held June 7, 1890, shows the
acceptance of a deed from Metcalf and an order to the secretary
to draw an order for the amount of the consideration with
interest; this order was drawn and paid June 30, 1890.    The
committee again met and appointed a subcommittee to obtain
specifications and plans for a town hall building, and at subse-
quent meetings the committee adopted a plan, advertised for
bids for the erection of the hall, and entered into a contract
for its construction and completion.    This contract required
the payment of $2,500 to the contractors in advance, which was
by the committee on the 22d day of August ordered to be
paid and was paid thereafter and before the institution of this
suit.    The moneys thus paid to the contractors, and to
Metcalf for the ground for the building, was collected by
taxation under the special levy made for this purpose and came
into the hands of the committee by its treasurer from the
officials who collected it.

On the 26th day of August, 1890, the appellees, fourteen in number, citizens and tax payers of the town of Normal, exhibited their bill in chancery against the members of the committee, praying for an injunction restraining further proceedings upon the part of the committee and for such other relief as might be found equitable.

Afterward, the town of Normal and J. Y. Thorp, supervisor of the town, were made defendants by appropriate amendments to the bill. The case was submitted to the court and a decree rendered which declares void all acts of the committee done or performed after *the town, at the April meeting, 1890,* determined not to build a town hall and rescinded all former actions having reference to or authorizing the construction of such hall, and enjoins the committee and each member thereof from acting or assuming to act further in the matter of building a town hall, and from pledging or paying out any funds in their hands for any such purpose. The costs were decreed to be paid by J. Y. Thorp, W. H. Schuneman and H. Zimmerman, who were members of the committee, each of whom appealed from such decree, and thus the record is before the court.

Mr. Charles M. Peirce, for plaintiffs in error.

That the town has authority to build a town hall under the statute can not be questioned. Starr & C. Ill. Stats. Sec. 39, Chap. 139, page 2411; Greeley v. People, 60 Ill. 19; French v. Quincy, 3 Allen (Mass.), 9; Town of Beaver Dam v. Frings, 17 Wis. 398; Stetson v. Kempton, 13 Mass. 271; Bates v. Bassett, 60 Vt. 530; Same case, 15 At. Rep. 202.

The building of a town hall comes clearly within the statutes cited. Greeley v. People, *supra*, Vansickelyn v. Burlington, 27 Vt. 70, and Dillon on Municipal Corporations, Sec. 91, and cases there cited, fix this question beyond dispute.

The town has power and it is its duty to provide for its wants and prospective wants. Bates v. Bassett, 60 Vt. 530; Greenbanks v. Boutwell, 43 Vt. 207; French v. Quincy, 3 Allen (Mass.), 9; Spaulding v. Lowell, 23 Pick. (Mass.) 80; Willard v. Inhabitants of Newburyport, 12 Pick. (Mass.) 80;

Thorp v. King.

Stephens v. Kent, 26 Vt. 511; Reynolds v. Mayor of Albany, 8 Barb. (N. Y.) 597; Eddy v. Willson, 43 Vt. 362; Hill v. Boston, 122 Mass. 344.

The power and discretion is left to the town to determine its present and future wants.

This case presents the question whether or not, after a tax has been legally levied and voluntarily paid for any purpose by the tax payers and there is no failure of the purpose for which the tax was levied, can a few tax payers complain and can the court of chancery, after adjudication and judgment rendered in a court of record against the same parties, declaring a certain proceeding or meeting void, from which no appeal is taken, then declare by decree the same meeting valid and set aside all action that has been done by reason of such decision?

There was no notice that anything would be done at the April meeting of 1890, to reverse or rescind what had been done at the June meeting, and common fairness required and the law required that a notice should have been given. Brackett v. Whidden, 3 N. H. 19; Dillon on Municipal Corporations (3d Ed.), Sec. 266, and notes there cited.

We concede that before the assessment of a special tax was made, and while the same remained in mere resolution, that the town might, by a town meeting legally called, have rescinded the order levying the tax, but after the tax was levied and collected it was certainly too late, and therefore the resolution passed at the April meeting of 1890, rescinding what had been done at the June meeting of 1889, was a nullity and void.    Pond v. Noegus, 3 Mass. 230–233; Stoddard v. Gilman, 22 Vt. 560.

The town, at a town meeting, has no right to audit accounts. The statute provides for the auditing of accounts and prescribes just how it shall be done.    People v. Supervisors of Onondaga, 16 Mich. 254, 258 and 259.

The committee (plaintiffs in error) were the agents of and acting for the town of Normal in everything that they did, and the ratification and approval by the board of town auditors is conclusive.    See Shea v. Inhabitants of Milfrcd, 14 N. E. Rep. 764; Dean v. Randolph, 132 Mass. 475.

All of the contracts of this committee were made (in the language of the Circuit Court) in good faith, and all of the parties with whom the committee had contracted are necessary parties; especially is this true of Stillhamer & Co., with whom the committee contracted for the material and erection of the town hall.

When a tax payer has paid tax that was levied for a special purpose, he is entitled to have the enterprise carried out after tax has been collected. Nelson v. Milford, 7 Pick. (Mass.), 18; Hall v. Inhabitants of Holden, 116 Mass. 172; Braintree Water Supply Co. v. Town of Braintree, 16 N. E. Rep. 424.

And in this case it was held by the court in the first instance when passing on the demurrer in the original bill, that if any third parties' interest intervene, then there could be no rescission, and we think that is the test to be applied in considering the right of the town of Normal to rescind in April, 1890, what had been done and acted on by the same town in June, 1889; and if this rule is correct, and we think it is, then there is no question but that plaintiffs in error are entitled to a reversal in this case, for there is no evidence anywhere in the record even tending to dispute that at least $3,180.78 of this fund had been actually paid out by this committee, and the payment of that amount approved by the town auditing board; besides, the tax collector had gathered two per cent of all of this money paid by the tax payers as a town hall fund, and by the decree of the court he is allowed to retain it, and pay back to each tax payer what he paid in, less two per cent. Third parties' rights have intervened; it is impossible to place the parties in *statu quo* in this case, for by the decree the tax payers lose two per cent of what they have paid in, and this committee, who were acting gratuitously, are to be held responsible for $3,180.78, money actually paid out, and damages that will accrue from the several contracts; and at the same time, by this decree, the town of Normal, not having paid one cent, is to have the three lots purchased of Metcalf by this committee, and by this decree three members of this committee are to pay principally all the costs in this case, and the other two

members, notwithstanding the record shows that they were present at nearly all of the committee meetings after the town meeting of 1890, and voted and took part in letting the contracts and expending the money, are to be held only for a small amount of the costs, and by this decree would not otherwise be responsible for one farthing of this money that must be paid back.   These facts are all so inconsistent and apparent that we can not make them plainer.   The decree must be reversed; it can not stand.

There will be no question, as we think, but that the tax was legally levied and collected, and that all action in regard to the town hall was legal, regular and in conformity with the statute up to date of April 1, 1890, and if so, the tax being legally levied and collected, can not be recovered back.   Swanston v. Ijams, 63 Ill. 165; Building Association v. Chicago, 61 Ill. 439; Falls v. City of Cairo, 58 Ill. 403; Fairfield v. People, 94 Ill. 244; Elston v. City of Chicago, 40 Ill. 514.

Mr. JOHN T. LILLARD, for defendants in error.

A town has a right to reconsider or rescind its former action if third parties' rights have not intervened.

While satisfied that a town organized under the laws of this State can not legally levy a tax or expend money for the erection of a town hall, as claimed on pages 6 and 7 of the brief of opposing counsel, yet, as that question is wholly foreign to the issues raised by this record, we will pass it without discussion, or citation of the authorities.

The question here is not whether the town of Normal can legally build a town hall, with store rooms, offices, etc., to rent, as appellants urge, but the question is, must it build such a hall against its own will and protest simply because it has levied and collected a tax and appointed a committee for that purpose?   Or can the town, by its electors in town meeting assembled, reconsider its original purpose, refrain from building, discharge its committee, and refund the money to the tax payers who paid it, so long as the rights of third parties have not intervened?

If a town can legally erect, or legally determine to erect, a

town hall, *e converso*, it must be true it can also legally deter-
mine that it will not erect a town hall, in other words, change
its mind.

If the town has the power to appoint a committee to do for
the town certain work, it surely has the power to discharge
that committee, being bound, of course, by the authorized acts
of the committee performed before its discharge. The cor-
porate power to do necessarily implies the power not to do, or
to undo, at least so long as the corporation only is affected by
such undoing. A corporation has as full power in the con-
duct of its affairs as an individual has in the conduct of his.

Judge Dillon says in his book on municipal corporations,
Vol. 1, Sec. 290 : "At any time before the rights of third
persons have vested, a council or other corporate body may,
if consistent with its charter and rules of action, rescind pre-
vious votes and orders."

The Supreme Court of Vermont says in Cox v. Town of
Tabor, 41 Vt. 28 : "A town, like an individual, may change
its purposes, and a town may express this change by its vote,
and unless some right in another has been acquired, or has
vested under its action, no one may complain of the change."

The same court says in Estey v. Starr, 56 Vt. 690-3 : "It
is clear a town can rescind its vote before rights of other per-
sons thereunder have attached." In this case the town had
voted to subscribe $66,000 to a railroad company and appointed
a committee to carry out the vote, and afterward, at another
meeting, the town rescinded its vote.

The Supreme Court of Maine in Gutchell v. Inhabitants of
Wells, 55 Me. 34, says: "A town may, at the same or at a
subsequent meeting, rescind a vote previously passed, when-
ever the rights of other interested parties have not intervened."

The Supreme Court of Connecticut in Terrett v. Town of
Shannon, 34 Conn., on page 108, says: "The case before us,
then, is simply one where a town has passed a vote giving
gratuities, which by force of a subsequent act became a legal
vote, and which the officers and agents of the town might
legally have carried into effect while the vote remained in
force, but where, the vote having been rescinded by a subse-

quent one, the officers and agents of the town were deprived of all power or authority to execute it, and yet threatened " (as plaintiffs in error were doing in this case) " to do it in violation of their duty and trust. It is very clear that such a case is a proper one for the interposition of the Circuit Court by injunction upon the application of a tax payer of the town," etc.

The Supreme Court of Illinois in Smith v. Bangs, 15 Ill. 399, decide the principle here involved to the extent that the discharged committee in the case at bar are amenable to the process of injunction which was decreed against them by the court below.

Plaintiffs in error refer to the case of Pond v. Noegus, 3 Mass. 230, and Stoddard v. Gilman, 22 Vt. 560, as holding that a vote to rescind can only be taken effectually, while a tax is in mere resolution, and not after the tax is levied and collected. In neither of those cases had the tax been collected, and the courts only held that a vote to rescind could be taken in such cases. There was a *quere* suggested in the Vermont case, not rising to even the point of *obiter dictum*, as to the effect of a rescinding vote after the collection of a tax, and the court simply says: " That question it is not necessary now to decide." It is enough to say that the same court later decided the question of the right to rescind at any time, saving only intervening rights of third parties in the 41st and 56th of Vermont, above cited.

While the fund to purchase or build is under its control, and not pledged by contract to any third party, it would seem on principle, as well as on the authorities, that it could conclude it would not have a town hall, just as clearly as it could determine after it was erected that it would sell it. Why should a court compel the town to go on and build by refusing its right to rescind, when the town can sell the hall the moment it is erected?

The method invoked in this case is the one prescribed by the courts for protecting tax payers and righting their wrongs. Jackson v. Norris, 72 Ill. 364; Colton v. Hanchett, 13 Ill. 615; Perry v. Kinnear, 42 Ill. 160; Littler v. Jayne, 124 Ill. 132, and cases cited; New London v. Brainard, 22 Conn. 522.

When the town of Normal rescinded, no rights of third parties had intervened.

The only limitation upon the right of a town to rescind the prior actions is the general doctrine of estoppel, viz., it can not take new action so as to cause injury to another who acted on the former steps of the town, but only the party who would be injured by such rescission can object to it. Let us apply it here. If plaintiffs in error were damaged by the rescinding action of the town of Normal they could invoke the doctrine of equitable estoppel to such an extent as would save them harmless from the rescinding action of the town— no further. If some party other than plaintiffs in error were harmed by such rescission, then such parties could themselves only resist rescission by the town to their detriment. But, assuming for the sake of argument that there were parties other than plaintiffs in error who had acquired rights under the first action of the town of Normal, plaintiffs in error, not being in privity with such parties, could not invoke affirmatively, nor in defending this action brought by tax payers, the claims which affected some one else.

BOGGS, J. It is settled by the case of Greely v. People, etc., 60 Ill. 19, that a town in a county under township organization may lawfully build a town hall. It is equally well settled that such town, like an individual, may change its purpose and rescind its former action unless some right in another has been acquired or has vested under its action. Dillon on Municipal Corporations, Sec. 290; Cox v. Town of Tabor, 41 Vt. 28; Estey v. Starn, 55 Vt. 690; Gretchell v. Inhabitants, etc., 55 Me. 433.

The power of a town to erect a hall or to rescind a former determination to do so, may be exercised at the regular annual town meeting, or at a special town meeting, if called for that purpose. Appellants urge, however, that the action of the annual town meeting of the town of Normal, April, 1890, rescinding the order and action of the special town meeting of June, 1889, which provided for the erection of a town hall, is illegal because, first, there was no notice given that such rescis-

sion was contemplated, or was to be considered by the meeting, and second, because third persons had acquired rights and vested interest in and under the order and action sought to be rescinded. The annual town meeting is required by a general law of the State to be convened in each town on the first day of April in each year at the place appointed in such town for such meeting, and is, as the statute declares, held for the purpose of electing town officers, and for the transaction of the business of the town. Sec. 1, Art. 6, Chap. 139, Revised Statutes.

A special town meeting can only be held if certain specified officers and fifteen voters of the town file with the town clerk a statement in writing setting forth the object of such meeting. Sec. 7, Art. 6, Chap. 139, R. S.

The town clerk is required by the second section of the same article to give notice only of the time and place of holding the annual town meetings; but if a special town meeting is called this official is required by the ninth section of the article to set forth in the notice not only the time and place of the meeting, but also a statement of the object and purpose for which the meeting is called; and the further provision of the same section is that "No business shall be done at a special meeting except such as is embraced in the notice."

The power and jurisdiction of the annual town meeting does not depend upon anything stated or omitted as to its object in the notice of the clerk.

The law invests the annual meeting with full power to transact all the business of the town, and notice only of the time and place of its meeting is required by the statute. We do not wish to be understood as holding that even this statutory notice of the annual meeting is necessary.

In The People v. Jackson County, 92 Ill. 441, it is said: "Where the time for holding a general election is fixed by law, the law operates as a notice of the time, and even if the notice be omitted, the election is valid."

The same principle, we think, is applicable to the annual town meeting, that is, that all electors are charged with notice of the time when such meetings will be held, and also with knowl-

edge that any and all corporate business of the town may then be lawfully transacted. "The theory of annual town meetings," it is said by our Supreme Court in C. & I. R. R. Co. v. Mallory, 101 Ill. 583, "is that the corporate body of the town is present for the purpose of transacting, and is competent to transact, all corporate business of the town not especially delegated to specified officers."

In our opinion, the annual town meeting of the town of Normal of April, 1890, had full power and authority to consider and act upon a proposition to abandon the erection of a town hall, and to rescind the action of the special meeting of June 22, 1889, though the notice of the town clerk as to the convening of such meeting contained no statement that such was the object, or one of the objects, of the meeting, unless such rescission illegally affected some vested right or interest of another. We may then inquire who, if any one, was unjustly affected by such rescission?"

It is urged that the contract obligations of the town through its building committee, with Metcalf, was impaired and destroyed. Prior to this meeting, negotiations for the purchase of lots upon which to erect the town hall, were pending between the committee and Metcalf. Metcalf had offered the committee two lots forty-two and one-half feet in width, at $10 per foot, and the committee, as a counter proposition, offered to take three lots, having a total width of sixty-two and one-half feet, at the price named. Metcalf replied that there was a cloud upon the title to the forty-two and one-half feet he proposed to sell, and that he was taking steps to remove it, and that he desired information from the committee as to any proposed change in the building to aid him in answering, as they wanted more of his property than he had offered to sell. It seems that Metcalf and the individual members of the committee after this and before the April annual meeting, had informal conversations about the proposed purchase of his property, but the records of the committee do not disclose that at the date of the annual town meeting any further action had been taken about it. On the 23d day of May, 1890, more than a month after the annual meeting had rescinded all

action looking toward the building of a town hall, the building committee ordered that an abstract of the title to Metcalf's lots be procured, and if it proved satisfactory, that a deed from Metcalf should be accepted and an order drawn in his favor in payment. Metcalf executed a deed June 3, 1890, and the committee formally accepted it June 7, 1890. Manifestly, Metcalf and the committee had not, prior to the annual meeting, completed a valid and subsisting contract.

If, however, a purchase and conveyance of the lots had been shown to have been made before the annual meeting, it would only follow that the rescission would not operate to affect that transaction. The fact that the town had become the owner of the site for a hall, would not bind the town irrevocably to a proposition to build a hall upon it. The contract with Metcalf was coupled with no such condition. The deed made by him contained no such requirement. No reason is perceived why the corporate mind may not change as to the use it will make of corporate property, as might the mind of an individual.

No contract for the erection of the building or any part of the work of its construction had been entered into when the annual meeting decided not to build, and the fact that the building committee afterward contracted for its construction and paid certain sums of money under such contract, could not operate retroactively and make invalid the action of the town meeting.

It is insisted that tax payers who had paid taxes levied to raise a fund to build the town hall, had rights which debarred the town from rescinding the order to build. Decisions of the Supreme Court of Massachusetts and Vermont are cited as supporting this doctrine. We have examined those cases and without incumbering this opinion with a recitation of the particular facts in each case, it may be said that, in our opinion, they do not establish the principle contended for. The general principle held by these cases is that a town can not rescind a contract, and that a tax payer who had paid taxes levied for a specified purpose, may require that the fund thus raised be applied to such purpose, that is, not diverted to and used for other enterprises or objects. We find no authority for the

view that a tax payer who had paid taxes levied for a certain purpose by a town, becomes thereby invested with such right as to deprive the town, which had all its power from a majority of the legal voters of the town, from withdrawing from the completion of such purpose. All that is required in such cases is a restitution to such tax payers.

It is not contended that the committee paid out any money without knowledge of the rescission, by the annual town meeting, of the former action of the town. The proof shows that each member of the committee was personally present at the annual town meeting.

The members of the committee had no vested right in the office or position of committee men, so as to prevent the town from abandoning the project of building a hall, or from discharging and dissolving the committee.

It therefore does not appear that when the town of Normal rescinded all former action looking toward the building of a town hall, that any person had acquired rights under or because of such former action. The proof shows that the auditing board of the town audited the disbursements of the committee and accepted the same as valid appropriations from the building fund. Whatever effect such action of the auditing board may or might have in the way of saving and protecting the committee, if called upon to account to the town for the fund, it could have no bearing upon the question of the power of the annual town meeting to act. We do not find that the decree appealed from directs that the fund be disposed of in any way. That portion of the decree is as follows:

"The other question, of refunding the said money raised as a special fund for town hall purposes, should be reserved for further consideration and determination in case other and proper parties are made defendants."

All, therefore, that has been said by counsel concerning the injustice and illegality of a supposed plan of restitution to the tax payers can have no application to the record before us.

The adjudication of the County Court in the matter of the application of the county collector for judgment against the

property of certain of the appellees (five in number), for the taxes levied to build this town hall, is relied upon as a bar or estoppel in this proceeding.

To create a complete or partial bar, the prior judgment must be between the same parties, standing in the same capacity or else between their privies.   Wells on Res Adjudicata, Sec. 15.

The parties here are not the same as in the proceeding before the County Court.   The cause of action was not the same.   The appellants were not parties to the proceeding in the County Court, and we find no reason for supposing that the judgment of that court in any respect operates as a bar on an estoppel of this proceeding.

Finding no error the decree is affirmed.

*Decree affirmed.*