## CRAIG *v.* GRIFFIN.

### Opinion delivered March 10, 1913.

COUNTIES—COUNTY COURT—COURT HOUSE—SETTING ASIDE ORDER.—A county court at one term appointed commissioners to construct a court house, ordered its construction and appropriated funds for the same. *Held*, at a subsequent special term, the county court may revoke such order, subject, however, to any contractual liabilities incurred under its former order. Under Kirby's Digest, § 1375 and § § 1009-1024, the court has a continuing control over such matters beyond the close of the term.

Appeal from Pope Circuit Court; *Hugh Basham,* Judge; affirmed.

*Hill, Brizzolara & Fitzhugh,* for appellant.

The orders of a county court under §§ 1009 to 1024, Kirby's Digest, pass beyond the control of the court at the close of the term. 10 Ark. 241; 38 *Id.* 150; 53 *Id.* 287; 73 *Id.* 523; 93 *Id.* 11; 68 *Id.* 340; 73 *Id.* 66; 89 *Id.* 160; 97 *Id.* 314; 96 *Id.* 427; 1 S. W. 468; 88 Ky. 485; 68 *Id.* 240; 84 *Id.* 547; 6 B. Mon. 214. The attempt to set aside the judgment at a subsequent term was void and should be quashed on *certiorari.*

*J. F. Sellers,* for appellees.

1. County courts, in many instances, act in a purely administrative capacity, in dealing with public concerns,

and have power to revoke, at a subsequent term, their former proceedings. 11 S. W. 468; 17 Am. St. 118; 61 Pac. 241; 45 S. W. 853; 28 Cyc. 384; 3 Am. Dec. 131; 103 Ind. 360; 118 *Id.* 54; 125 *Id.* 247; 2 Dillon on Mun. Corp., § 539; 16 L. R. A. 260; 55 Am. St. 192; 8 S. W. 434; 40 S. E. 238. But our court has settled this question. 114 S. W. 214; 73 Ark. 523.

2. There are no vested rights intervening. 105 Fed. 293; 58 L. R. A. 904; 161 U. S. 40; 151 Fed. 399; 67 S. W. 369.

3. Non-judicial proceedings are not subject to review by *certiorari.* 100 Am. Dec. 337; 45 Pac. 529; 62 Ark. 196; 70 *Id.* 588.

4. *Certiorari* is not a writ of right. 6 Cyc. 748; 113 Am. St. 432; 69 Ark. 518; *Ib.* 344.

SMITH, J. On the 12th day of November, 1912, the appellants filed in the Pope circuit court, a petition for *certiorari,* in which they alleged: That they were citizens and taxpayers of that county and that on May 20, 1912, they were appointed commissioners of public buildings by the county court of Pope County, and qualified and entered upon the discharge of their duties as such. That in pursuance of their duties, they purchased grounds for the erection of a court house, and prepared and submitted plans and an estimate of cost, and all their proceedings were approved by the county court, and the court appropriated, at its March 1912 term, the sum of $60,000 for the erection of a courthouse and directed them to use as far as possible the material in the present court house. That said March term adjourned without day. That on the 12th day of November, 1912, pursuant to a notice given for ten days, the county court of Pope County attempted to hold a special term, and at this term the following proceedings as shown by the court's order, were had.

"Whereas, heretofore and on or about the 20th day of May, 1912, this court made and entered of record an order and judgment among other things reciting that it was found expedient and necessary that the court house

of said county be repaired and enlarged, and appropriated $30,000 therefor and appointed S. J. Rye, M. R. Craig and W. P. Lewellen commissioners of public buildings for the purpose of erecting and carrying out said order. And whereas, said commissioners of public buildings having filed their report recommending the destruction or tearing down of the present court house of said county and the building of a new one. This court on or about the 10th day of June, 1912, did by a *nunc pro tunc* order made and entered of record among other things approve the report of said commissioners of public buildings, and order a new court house built and appropriated $60,000 for that purpose, said order and judgment ordering and directing that said order and judgment should take effect as of the date of the one of the same term and effect previously made but not entered of record.

"And whereas, this court on or about the 13th day of June, 1912, made and entered of record an order and judgment, which, among other things, recited the prior order and judgment ordering a new court house to be built and directed said commissioners to advertise for bids and let the contract for the building of said court house. And it now appearing to the court that the present court house of Pope County is sufficient for the needs of said county, that it is now and was at the time of making and entering of record said above mentioned orders and judgments inexpedient, unwise and unnecessary to build a new court house.

"It is therefore by the court considered, ordered and adjudged that each one and all of the above mentioned orders and judgment heretofore made and entered of record by this court directly or indirectly directing or authorizing the destruction or removal of the present court house of said county or building of a new one be and they are each and all of them repealed, revoked, cancelled, set aside and held for naught.

"It is further ordered and adjudged that all authority of said commissioners of public buildings to tear

down or remove the present court house or to make contracts therefor or for the building of a new court house or to otherwise act as commissioners of public buildings except as to the duties and powers conferred upon them pertaining to the building of a county jail be and the same and they are hereby revoked and annulled.

"Ordered, that this court be adjourned until the next regular term, which meets the first monday in January, 1913.

"Ira Griffin, County Judge."

Petitioners alleged that the proceedings of said special term were void and they prayed that the writ of *certiorari* issue, bringing up the record as aforesaid, and that on the hearing the same be quashed.

Appellees filed a demurrer to this petition upon the ground, among others, that the petition did not state a cause of action, and from the order of the court sustaining this demurrer, this appeal is prosecuted.

The facts sufficiently appear from the recitals of the petition and the order of the court, above set out, to present the question here involved and the following statement of the issues is copied from one of the excellent briefs filed in the cause.

"No point was made in the circuit court or is made here as to the regularity of the special term, and no contention is made that the special term held by a succeeding judge did not have all the power that a general term held by the same judge would have had.

"The vital question, and the one going to the merits of the controversy, is whether the orders of a county court in the exercise of its powers and the duties under sections 1009 to 1024 inclusive of Kirby's Digest, pass beyond the control of the court at the close of the term, as do judgments in adversary proceedings, or is the action of the court, the exercise of administrative authority as an agency of the public affairs of the county and of which the court has a continuing jurisdiction."

Under our laws, the management of the internal affairs of the counties is vested in the county courts of the

respective counties, the power and jurisdiction of such courts being set out in general terms in section 1375 of Kirby's Digest, and there are many matters in which this court acts in a purely administrative capacity and over which, in the very nature of things, it must have a continuing control. It may adopt some policy of internal improvement by its order, which it may be necessary later to change, and this it may do when it becomes necessary so to do, subject only to the obligation of protecting such contractual rights as have become vested under its prior orders and judgments. In its administrative capacity, the county court acts for the county as does the council for a city or a town, or the Legislature for the State, and within the sphere of the operations of each, an obligation exists to be aware of and to consider the conditions which require the exercise of their respective functions, and a discretion abides for that purpose. But this discretion is subject always to the obligation of regarding any contractual rights or obligations which these agencies of government have made or incurrerd.

Our attention is called to a case very similar to this in principle. The county court of Crittenden County, Kentucky, had made an order and appropriation for the construction of certain bridges and had appointed a commissioner to superintend the work, but at a subsequent term of the court, the court being then of the opinion that the location of the bridges as fixed by its prior order made them subject to overflow and destruction, made an order setting aside its former order and changed the location of these bridges. Citizens of the county, who favored the original location, filed a petition for mandamus in the circuit court to compel the court's commissioners to build the bridges, as provided for in the original order, the contention there being that the court could not at a subsequent term revoke its prior order. The circuit court granted the petition and ordered the issuance of the writ as prayed, but upon appeal, the Court of Ap-

peals of the State reversed the judgment and dismissed the petition and in doing so said:

"No contract had been entered into with anyone to perform this work, but the county court, as the representative of the corporation or county, had only exercised its discretion in making an appropriation that at one time they thought advisable, but upon further consideration deemed unwise. They had contracted with no one, and in their legislative capacity undertook to make the appropriation, but, whether legislative or judicial, it was the only party to the proceeding, and had the right at any time to revoke the order making the appropriation until the rights of others became involved. In *Turnpike Road Co.* v. *McMurtry,* reported in 6 B. Mon. 215, this court held that a judicial act by the county court, determining the rights of individuals was final, and could not at a subsequent term of the court be set aside at the mere will of the court. This doctrine is well understood, but has no application to a case like this, where the magistrates are assembled as a court of claims, to make ordinary appropriations for public improvements, in which one citizen has as much interest as another. In fact such an appropriation is non-judicial, and may be disregarded at its discretion, unless individual rights have become involved. A municipal corporation, through its council, might make an appropriation for the improvement of its streets, and before any contract right had accrued deem it expedient to withdraw or annul the order making the appropriation, and the right to do so can not be questioned. The discretion confided to a county court in regard to the finances of the county, and the appropriation of money for public or county purposes, can not well be controlled by the action of a higher tribunal　*　*　*　It results, therefore, that the county court, in the exercise of its discretion, has said that the bridges should be dispensed with, and, having complete power over the subject, the writ of mandamus should have been refused." *Crittenden County Court* v. *Shanks,* 11 S. W. 468.

"In *Platter* v. *Board of Commissioners of Elkhart County,* 103 Ind. 360, the Supreme Court of that State, referring to the power of the county commissioners. (county court) said in the first paragraph of the syllabus:

" 'The Board of County Commissioners has power to change the location of county institutions and to do all acts necessary to effect the change, and such power is a continuous one, not exhausted by a single exercise.' "

In *Cox* v. *Mt. Tabor,* 41 Vt. 28, it was said: "A town, like an individual, may change its purposes, and a town may express this change by a vote, and, unless some right of another has been acquired or has vested under its action, no one may complain of the change."

We are cited to many cases which are substantially to the same effect, but our own court has announced the principle which here controls and it will be unnecessary to collect or cite other authorities. In the case of *Graham* v. *Nix,* 144 S. W. 214, an election had been held upon the removal of the county seat of Dallas County. But before the election for removal of the county seat was ordered, an abstract of title to a lot in the town of Fordyce, proposed to be donated as a site for the new court house, was filed and presented with the petition of the citizens, who asked for the removal. After the commissioners had adopted and reported plans for the building and they had been approved by the county court, and after several terms of the court had intervened since the making of the court's order for the erection of the building, the commissioners reported that the original site was not a proper one, whereupon the court made an order changing the site of the building. It was there said:

"It is contended that the order of the court entered October 6, 1908, declaring the result of the election and ordering the removal of the county seat, and the subsequent orders of that court directing the commissioners to proceed to the construction of the court house on the school district lot, could not be set aside at a later term, and that the order of the county court in May, 1911,

changing that order, was void. The power of the county court over the location of public buildings is a continuing one. It is the same as if the building had been constructed on the school district lot, and afterwards the county court saw fit to dispose of that site and change to a new location in the town which constituted the county seat. If the county court had the power at all to order a change of the location of the court house, it had the power to make this change before the building was actually constructed as well as to wait until its order was carried out by the construction of the new building and then order the change. There is nothing in the decision in *Walsh* v. *Hampton, supra,* which limits the power of the county court to make a new order with respect to the change of location. In that case we merely held that the order of the court, declaring the result of the election and ordering the removal, was final and could not be vacated at a subsequent term; but that was a matter over which the county court had no continuing power. After it declared the result of the election and ordered the removal pursuant thereto, its power was exhausted. The difference between the two kinds of judgments lies in the continuing power of the county court over the subject of county buildings, as distinguished from the power to declare the result of an election by the people.''

We conclude, therefore, that the judgment of the court below is correct and it is accordingly affirmed.